### E. STERNBERGER CO. v. SUMMERFORD

(131 S. E., 322)

CHATTEL MORTGAGES—OWNER OF COTTON HELD NOT TO HAVE RIGHT TO QUESTION PROPRIETY OF SALE MADE BY MORTGAGEE TO WHOM HE HAD CONSIGNED COTTON, UNDER AGREEMENT THAT HE WOULD HOLD AS LONG AS POSSIBLE.—Owner of cotton who had mortgaged crop as security for advances, and consigned cotton to mortgagee for application on debt, *held* not to have right to question propriety of mortgagee's ordering cotton sold, after having agreed to hold it until he needed the money, and particularly in view of waiver by giving new mortgage after having knowledge of sale.

Before DENNIS, J., Marlboro, September, 1924.    Affirmed.

Action by the E. Sternberger Company against J. W. Summerford.    From a judgment for plaintiff, defendant appeals.

The report of the Referee is as follows :.

This is an action brought originally as a complaint on an open account, and thereafter so amended as to sue for an account stated, demanding interest and an attorney's fee in accordance with chattel mortgage given to secure the account.    The defendant admits the account, but alleges that he turned over to the plaintiff certain cotton which was to be held by the plaintiff until defendant should desire to sell; that, if such agreement had been carried out faithfully by plaintiff, the account would have been overpaid; and the defendant asks for an accounting, and that he recover judgment against the plaintiff on such accounting because of the breach on the part of the plaintiff in selling the cotton before the expiration of the time agreed upon.    Plaintiff's attorney took the position at the inception of the cause that no affirmative relief could be sought because of the pleadings, but I do not think such is necessary to be decided for a complete determination of this controversy.

The testimony and all exhibits are reported herewith, and I am satisfied that the plaintiff acted throughout in the best of good faith and endeavored to protect the interest of both parties.    It is admitted that the plaintiff advised the defendant to sell before the cotton was delivered and before the price of cotton had so materially declined.    Plaintiff had the legal right under its chattel mortgage to seize the crop and force their immediate sale; but, in an effort to cooperate with the defendant, the plaintiff did not do so, and held the cotton when it was doubtless the desire of the plaintiff, for financial reasons, to sell.    I think the preponderance of the testimony is against the contentions of the defendant, and

that the cotton was placed with plaintiff to be sold by plaintiff at such time as the plaintiff desired to sell it. That plaintiff sold at a low level of the market cannot be charged against the plaintiff. To hold otherwise would charge this business firm with foresight as to the fluctuations of the New York Cotton Exchange. This is a typical 1920 transaction. It is an unfortunate one; but that cannot relieve the defendant from his liability to pay an honest debt.

Certain it is that, if the defendant ever had any rights, he waived them by twice admitting over his hand and seal that he owed the plaintiff the amount that the plaintiff claims, and each time, according to the sworn testimony of the defendant himself, after he had learned that his cotton had been sold, what it brought, after he had received account sales of the cotton broker through Sternberger Company, and after he had advised with the president of the bank with which he did business as to the best course for the defendant to pursue. Knowing his rights, he twice formally ratified the action of the plaintiff in selling at the time he did. Independent of waiving (though it appears to me that such is conclusive here), it is the strongest kind of corroboration of the testimony of Mr. Strauss for the plaintiff. For at least two years after the sale of the cotton, after defendant knew of the sale, after he had been furnished with account sales of the cotton, after he had advised with president of his local bank, the defendant continued in the usual course of business relations with the plaintiff; was furnished advances by the plaintiff; and enabled to bring down his losses considerably. In the course of this business, the old account of the defendant was gone over with him by Mr. Strauss, acting for the plaintiff, and the defendant gave a note to pay the interest on this old account, and, when the note became due, paid the same. After several years of carrying this old account and admitting it, and paying interest on it, and when suit was brought only after the defendant had transferred his property to his wife, the defendant denies

that he is due the plaintiff anything. The testimony and the facts in the case do not appeal to me. The preponderance of evidence is clearly in favor of the plaintiff.

Accordingly I recommend that plaintiff have judgment against the defendant in the sum of $837.23 with interest from January 1, 1923, at the rate of 7 per cent. per annum and 10 per cent. as a reasonable attorney's fee, making a total of $946.80.

*Mr. J. W. Legrand,* for appellant, cites: *Debtor in power of creditor:* 48 Am. Dec., 173; 12 Howard, 152; 3 Pomeroy's Equity, 3rd Ed., Sec. 1193. *Title of mortgagee of personalty after condition broken:* 31 S. C., 131, 1 S. C., 130. *Waiver must be intentional:* 69 S. C., 304, 63 S. C., 188; 27 R. C. L., 904 and 909. *Interest on account stated:* Civ. Code, 1922, Sec. 3636. *Nature of account stated:* 100 S. C., 106; 29 L. R. A. (N. S.), 337, 27 L. R. A., 822; 1 Cyc., 364; 1 R. C. L., 211; 1 A. & E. Enc. Law, 2d Ed., 437.

*Messrs. Tison & Miller,* for respondent, cite: *Mortgaged property allowed shipped out of State for sale; necessity of advertising waived:* 28 S. C., 255. *Title of mortgagee of personalty after condition broken:* 120 S. C., 220. *Nature of account stated:* 129 S. C., 40; 128 S. C., 267; 100 S. C., 106.

August 14, 1925.

The opinion of the Court was delivered by Mr. Justice Cothran.

Action for $837.23, the balance claimed to be due upon an account, evidenced by an account stated.

The controversy has arisen out of transactions between the parties covering the period from 1920 to 1922, inclusive. The plaintiff is a corporation engaged in the mercantile business at Clio, S. C.; the defendant, a farmer, living some 18 miles from Clio, his nearest railroad station being Bingham, S. C.

On the 7th day of January, 1920, the plaintiff agreed to furnish advances to defendant during said year for agricultural purposes in a sum not to exceed $3,000.00. To secure the payment of such advances the defendant on the same date executed to plaintiff an agricultural and chattel mortgage covering all crops of cotton, cotton seed, corn, oats and other crops therein named that the defendant might be interested in during the year 1920, on about one hundred and ten acres of land, which fell due October 1, 1920. At the end of that year, according to the plaintiffs' books, the defendant's account stood thus:

Items charged ...........................$ 2,997.54
Credits:
   Sept. 17, 1920, overcharge on bagging $ 18.00
   Oct. 6, 1920, cash ................. 430.94      448.94

    Balance ..............................$ 2,548.60

In the meantime, however, the defendant made certain deliveries of cotton to the plaintiff, the proceeds of which were to be applied to the above balance, secured by the chattel mortgage upon the defendant's crop: October 30, 1920, 10 bales of short staple, which were shipped by the defendant in the plaintiff's name, from Bingham, S. C., consigned to Savage Son & Co. at Norfolk, Va.; November 23, 1920, 6 bales of long staple, which were shipped by the defendant from Bingham, S. C., to the plaintiff at Clio: January 25, 1921, 2 bales of short staple and 2 bales of long staple, which were hauled by the defendant on his wagon and delivered to the plaintiff at Clio.

The plaintiff shipped the deliveries of November 23, 1920, and January 25, 1921, 8 bales of long staple and 2 bales of short, to Savage Son & Co., at Norfolk; thus placed the entire 20 bales, 8 of long staple and 12 of short, with Savage Son & Co., held in the name of the plaintiff, and upon which advances were made by Savage Son & Co. to the plaintiff.

The plaintiff held the 20 bales on deposit with Savage

Son & Co. until June 7, 1921, at which time it was ordered sold, by the plaintiff, and realized:

For the long staple:

   10 Bales at 9½

    2   "   "   5½ ................$538.12

   Less storage, etc. ................ 106.63   $    431.49

For the long staple:

   4 Bales at 13¼

    2   "   "   10

    2   "   "   5½ ................$402.29

    Total ................................ $    765.06

After the balance as of January 1, 1921, had

   been ascertained at ..................... $ 2,548.60

Advances continued up to June 7, 1921 (the

   date of the sale of the cotton), amounting to    695.52

                          $ 3,244.12

To which the proceeds of the sale of the 20

   bales were applied ......................    765.06

Leaving due ............................. $ 2,479.06

Thereafter advances continued up to Oct. 1,

   1923, amounting to ...................    647.37

                          $ 3,126.43

And deliveries of cotton were made thereupon:

   September, 1921 .............. $   309.82

   November, 1921 ..............   1,251.46

   September, 1922 ..............    330.48

   November, 1922 ..............    263.48

   July, 1923 ...................     66.98

   September, 1923 ..............     66.98 $ 2,289.20

    Balance ............................. $    837.23

The contention of the defendant is that the agreement between him and the plaintiff was that the plaintiff would pay the warehouse charges upon the cotton, and that it should not be sold until the defendant decided to sell the same, and should make his request known to the plaintiff; that the plaintiff ordered the cotton sold without notice to him; and that the price realized was at a great loss to him; that the cotton should have been sold not later than March 1, 1921; and that he should be allowed credit for what cotton was worth when he delivered it, or at least what it was worth on March 1, 1921.

The defendant, in his testimony, makes no effort to establish the allegation in his answer that the plaintiff agreed to carry the storage charges upon the cotton. His testimony attempting to sustain the other allegation that the plaintiff agreed to store the cotton until it pleased the defendant to have it sold is exceedingly vague. He says:

"He said put the cotton at Bingham and ship it to Savage Son & Co. and send me the bill of lading and the weights here, and then he said when you get ready you can come and settle most any time."

The testimony of the plaintiff's manager is much more consonant with the probabilities of the case:

"No particular agreement. I advised and begged Mr. Summerford and others to sell their cotton, and they thought cotton would go up in January, and I told them if that was the case I would try to hold the cotton, but couldn't hold it indefinitely, that I needed my money, and Mr. Summerford said, 'Do the best you can with mine,' and I said, 'I will do that.' And I sent to Mr. Summerford time and again during the winter, and especially when cotton was around 20 cents, and was hanging around 16 and 17 cents, and told him that I must have my money; that I couldn't wait any longer. Then Mr. Summerford asked me to hold the cotton, and I told him I would do so, but we had no agreement as to the length of time, and I tried to induce him to

sell the cotton, which must have been best for him as well as other people. He left the cotton with me to do the best I could with it. That is the way the cotton was left with me. I have been in the cotton business too long for a man to come in and tell me to hold cotton indefinitely. It isn't a business proposition, because it is a one-sided affair."

The defendant did nothing, and now seeks to throw the loss incurred by his inaction and the plaintiff's effort to accommodate upon the plaintiff. The latter had pledged the cotton to secure advances which he would not have needed if the desire had not been to help the defendant.

Any right, however, which the defendant may have had to question the propriety of ordering the cotton sold in June, 1921, has been waived by the action of the defendant in giving a new mortgage in March, 1922, after he had knowledge of the sale, for the balance due on January 1, 1922, $917.78, which was a balance struck after allowing the defendant credit for the proceeds of the sale.

In addition to this, the defendant, in July, 1923, more than two years after the sale of the cotton, gave his note to the plaintiff for $66.98, representing the interest upon his indebtedness up to January 1, 1923, which included the application of the proceeds of sale, and paid it at maturity. The letters of the defendant in 1923 show a recognition of his debt to the plaintiff, asking indulgence and promising to pay, without an expression of the least dissatisfaction with the method of the plaintiff's handling.

It is a hard case upon the defendant, but it is clear that ne has suffered from the failure of the realization of his hopes in the rise of cotton rather than from improper conduct on the part of the plaintiff.

The report of the Referee, Mr. Riley, confirmed by Judge Dennis, is entirely satisfactory to the Court. Let them be incorporated in the report of the case.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY, MESSRS. JUSTICES WATTS and MARION, and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.